**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

THOMAS R. LORD,                    )
                                   )
            Petitioner,            )          3:98-cv-00574-LRH-VPC
                                   )
vs.                                )
                                   )          <u>ORDER</u>
E.K. MCDANIEL, *et al.*,           )
                                   )
            Respondents.           )
_____/

        This action proceeds on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, by

petitioner Thomas R. Lord, a Nevada prisoner.  Before the court is respondents' motion to dismiss

(docket #104).

**I.        Procedural History**

        Petitioner and co-defendant Donald James McDougal were charged by way of information in

the District Court for Clark County with conspiracy to commit murder and/or robbery (count I),

murder with the use of a deadly weapon (count II) and robbery with the use of a deadly weapon

(count III) for offenses committed on October 5, 1988.  Exhibit C.[1]  Co-defendant McDougal was

tried first, convicted of all three crimes, and was sentenced to life in prison with the possibility of

parole for the murder conviction.  Exhibit OO.  After a jury trial, petitioner was convicted of

conspiracy to commit murder and/or robbery, first degree murder, and robbery with the use of a

_____

        [1]  The exhibits cited in this order are those filed by petitioner in support of his first amended
petition for writ of habeas corpus and motion to reopen the case, and are located in the record at docket
#18, 43 and 95.

1   deadly weapon. Exhibit M. The jury sentenced petitioner to death for the murder conviction.

2   Exhibits O and P. Judgment of conviction was entered on October 4, 1989. Exhibit Y. Execution

3   was stayed pending petitioner's appeal to the Nevada Supreme Court. Exhibit W.

4       Petitioner raised thirteen claims on appeal. Exhibit FF. The Nevada Supreme Court affirmed

5   petitioner's convictions, but reversed the death sentence and remanded for a new penalty hearing.

6   Exhibit OO. Remittitur issued on February 28, 1991. Exhibit QQ. On December 17, 1991, the

7   district court entered an amended judgment of conviction. Exhibit VV. Petitioner was sentenced as

8   follows: count I, six years in prison; count II, life in prison without the possibility of parole with an

9   equal and consecutive sentence of life in prison for the use of a deadly weapon; count III, fifteen

10  years in prison with an equal and consecutive sentence for the use of a deadly weapon. *Id*. Counts I

11  and III were to run concurrently to each other and consecutively to count II. *Id.*

12      Petitioner filed a state habeas corpus petition on December 17, 1992, alleging two grounds

13  for relief. Exhibit XX. On May 6, 1994 petitioner mailed an amended habeas corpus petition,

14  adding twelve grounds for relief in addition to the two he had argued in his original petition,

15  including the claim that trial counsel was ineffective for failing to investigate and present evidence

16  that co-defendant McDougal committed the crimes. Exhibit EEE. The trial court held an

17  evidentiary hearing over the course of three different days. Exhibits A-12 and A-13. McDougal

18  testified that he alone committed the crimes and that he was coerced into implicating petitioner. *Id.*

19  The trial court denied the petition, and found trial counsel was not ineffective. Exhibits A-13 and

20  MMM. Petitioner appealed, and the Nevada Supreme Court dismissed the appeal on May 19, 1998.

21  Exhibits NNN and NNNN.

22      Petitioner mailed a federal habeas petition to this court on September 27, 1998 (docket #7).

23  This court appointed counsel (docket #6) and an amended petition for writ of habeas corpus was

24  filed, arguing ten grounds for relief (docket #17). On December 28, 2001, this court found grounds

25  one, two, seven, nine, and ten of the petition were unexhausted (docket #47). This court denied

26  petitioner's request for a stay and ordered petitioner to either abandon the unexhausted  claims or

27  voluntarily dismiss the petition. *Id.* Petitioner elected to abandon unexhausted claims (docket #49).

28  The remaining claims were denied on March 7, 2002 (docket #52). Petitioner appealed, and the

1    Ninth Circuit Court of Appeals found that this court erred in refusing to stay the proceedings while

2    petitioner returned to state court to exhaust his claims (docket # 69).  The court vacated this court's

3    orders and instructed this court to allow petitioner to stay the proceedings.  *Id.*

4          This court held a status conference on December 3, 2004 (docket #75).  The parties discussed

5    whether the unexhausted claims would be procedurally barred if petitioner returned to state court in

6    order to exhaust the claims.  *Id.*  The court ordered the parties to brief the issues.  *Id*.  Petitioner

7    argued that a return to state court would be futile as another state habeas corpus petition would be

8    found to be untimely and successive (docket #78).  Moreover, petitioner contended that it was not

9    likely that he would receive review on the merits, therefore this court should deem his claims to be

10   exhausted.  *Id.*  Finally, petitioner alleged that although his claims would be procedurally defaulted

11   in the state court, the court should excuse his procedural default as he could make a showing of

12   actual innocence.  *Id.*

13         This court found that while federal courts could determine that claims are exhausted if it is

14   clear that the state courts will procedurally default the claims, in Nevada the state courts were

15   authorized to excuse procedural default under limited circumstances (docket #89 at 2).  Moreover,

16   this court determined that petitioner's actual innocence claim was without merit.  *Id.* at 7.  The court

17   gave petitioner thirty days to either have grounds one, two, seven, nine, and ten dismissed from the

18   amended petition and allow the court to enter judgment against him or inform the court that he

19   wished to stay the proceedings.  *Id.* at 8.  Petitioner elected to return to state court to exhaust his

20   claims (docket #91).  On June 20, 2005, the court dismissed the case without prejudice, and

21   administratively closed the case while petitioner returned to state court (docket #92).

22         Petitioner filed a second habeas corpus petition in the state district court.  Exhibit A-29.  The

23   state court held an evidentiary hearing, and denied the petition, finding that the petition was untimely

24   and successive.  Exhibits A-32, A-33.  The court further determined that petitioner had not made an

25   adequate showing of actual innocence and that he had not shown good cause and/or prejudice to

26   overcome the one-year time bar or to excuse the filing of a successive petition.  Exhibit A-33.  On

27   appeal the Nevada Supreme Court affirmed the lower court's denial of the petition.  Exhibit A-39.

28         On December 20, 2006, petitioner filed a motion to reopen the case, alleging he had

1   completed his state court proceedings (docket #94).  This court granted the motion to reopen and

2   order respondents to answer or otherwise respond to the remaining claims in the amended petition

3   (docket #99).  Respondents filed a motion to dismiss and answer, arguing claims one, two, seven,

4   nine, and ten were procedurally defaulted in state court (docket #104).  Petitioner filed a response

5   opposing the motion to dismiss (docket #111) and respondents filed a reply to that response (docket

6   #117).

7   **II.  Procedural Default**

8         **A. General Principles**

9         Generally, in order for a federal court to review a habeas corpus claim, the claim must be

10  both exhausted and not procedurally barred.  *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir.

11  2003).  Procedural default refers to the situation where a petitioner in fact presented a claim to the

12  state courts but the state courts disposed of the claim on procedural grounds rather than denying the

13  claim on the merits.  A federal court will not review a claim for habeas corpus relief if the decision

14  of the state court regarding that claim rested on a state law ground that is independent of the federal

15  question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31

16  (1991).  The *Coleman* Court stated the effect of a procedural default as follows:

17
18
19
20
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

21  *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  The procedural

22  default doctrine ensures that the state's interest in correcting its own mistakes is respected in all

23  federal habeas cases.  *See Koerner*, 328 F.3d at 1046.

24        **B.  Procedural Default in the State Court**

25        In this case, there was a procedural default in state court.  On the appeal from the denial of

26  petitioner's state habeas petition, the Nevada Supreme Court ruled:

27
28
> Lord filed his petition approximately 14 years after this court affirmed his conviction.  Thus, his petition was untimely. [fn 3: NRS 34.726(1).] The petition was also successive. [fn 4: NRS 34.810(2).]

1
2
3
4
5
6
7
8

Because more than five years passed between the filing of the judgment of conviction and Lord's filing of the instant petition, prejudice to the State is presumed. [fn 5: *See* NRS 34.800(2).] Lord's petition is barred absent a showing of good cause and prejudice [fn 6: *See* NRS 34.726(1); NRS 34.800(1)(b); NRS 34.810(1), (3).] or that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." [fn 7: *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Mazzan v. Warden*, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996).] "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." [fn 8: *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).] To establish actual innocence, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." [fn 9: *Id.* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).]

9
10
11
12

Lord does not attempt to show good cause, instead claiming he is actually innocent of the crimes. Lord bases his claim of actual innocence on an affidavit executed by James McDougal, Lord's coconspirator in the crimes. McDougal was also convicted by a jury for his participation in the crimes, but his murder sentence includes the possibility of parole. McDougal's affidavit states that he was "solely" responsible for the entire incident," that it was "his fault in every way," and that Lord "had nothing to do with the crime."

13
14
15
16
17
18
19
20
21

We conclude that McDougal's affidavit does not establish that no reasonable juror would have convicted Lord. The robbery and murder were charged under alternate theories of direct liability and aiding and abetting. At the time of Lord's trial, McDougal had implicated Lord in the crimes. McDougal did not testify at Lord's trial. Lord's appendix provides a few short excerpts of McDougal's testimony at his own trial, in which McDougal appears to testify he was with Lord and the victim before the victim's death but does not remember much between that time and some time later, when he woke up in the desert with Lord. At Lord's trial, witnesses testified that Lord and McDougal were in the victim's truck two hours after the victim's body was found; the victim's truck had numerous bloodstains inside; McDougal, accompanied by Lord, tried to trade property like that stolen from the victim for gasoline; and Lord had blood on one of his boots that matched the victim's blood type, but not Lord's or McDougal's. [fn 10: *Lord*, 107 Nev. at 31-32, 806 P.2d at 550.] Because Lord has not established a colorable claim of actual innocence, his claims were properly dismissed as procedurally barred.

22
23

Exhibit A-39. Thus, the dismissal of the second state post-conviction petition was affirmed by the Nevada Supreme Court on the bases of state procedural rules.

24
25

**C. The Procedural Default Was an Independent and Adequate State Law Ground for the Nevada Supreme Court's Disposition of Petitioner's Claims**

26
27
28

For the procedural default doctrine to apply, "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129

5

1   (9th Cir. 1996).

2          NRS 34.726(1) has been held to be an independent and adequate state procedural rule that

3   will bar federal review.  *See Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000); *Moran v.*

4   *McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996).  Furthermore, the Ninth Circuit Court of Appeals

5   has also found NRS 34.810(2) to be an independent and adequate state ground.  *See Vang v. Nevada*,

6   329 F.3d 1069, 1074-75 (9th Cir. 2003); *Bargas v. Burns*, 179 F.3d 1207 (9th Cir. 1999).  This court

7   finds that the Nevada Supreme Court's holding that petitioner's second state habeas petition was

8   procedurally barred under NRS 34.726 and 34.810 was an independent and adequate ground for the

9   court's denial of the state habeas petition.

10          **D.  Cause and Prejudice or Fundamental Miscarriage of Justice**

11          To overcome a procedural default, a petitioner must establish either (1) "cause for the default

12   and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result

13   in a fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

14   omitted).

15          Petitioner does not argue cause and prejudice to overcome procedural default, but instead

16   asserts that his conviction constitutes a fundamental miscarriage of justice as he is actually innocent

17   (docket #111 at 10-11).  Specifically, petitioner contends that he has consistently maintained his

18   innocence.  Moreover, petitioner points to the affidavit signed by his co-defendant that states only

19   McDougal committed or is responsible for the murder.  Petitioner asserts that the affidavit is new,

20   reliable evidence.

21          A petitioner can meet the fundamental miscarriage of justice standard when he shows "actual

22   innocence," or new evidence presented to the court which raises a sufficient doubt as "to undermine

23   confidence in the result of the trial."  *Schlup v. Delo*, 513 U.S. 298, 317 (1995).  Under *Schlup*,

24   actual innocence is established when, in light of all of the evidence, "it is more likely than not that no

25   reasonable juror would have convicted [the petitioner]."  *Bousley v. United States*, 523 U.S. 614, 623

26   (1998) (quoting *Schlup*, 513 U.S. at 327-28).  The petitioner must establish his factual innocence of

27   the crime, and not mere legal insufficiency.  *Id.; Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir.

28   2003).  Moreover, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his

6

1    allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific

2    evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at

3    trial." *Schlup*, 513 U.S. at 324; *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

4           Petitioner has previously raised this same claim of actual innocence in these proceedings

5    (docket #78).  There is no indication that petitioner is raising a new claim or fact that this court has

6    not previously considered.  This court, in its April 25, 2005 order, assessed whether McDougal's

7    claim that petitioner did not commit the crimes was reliable, and determined that the affidavit was

8    unreliable and that no evidentiary hearing was necessary (docket #89).  Moreover, this court found

9    petitioner's actual innocence claim to be without merit. *Id.*

10          This court again reviews the record and finds that petitioner has not met the standard for

11   actual innocence to show that his conviction is a fundamental miscarriage of justice.  At trial

12   evidence was introduced to show that the victim was found in the bushes off of Interstate 15 in

13   Nevada with multiple stab wounds.  Exhibits ZZZZ through A-2.  Petitioner and co-defendant

14   McDougal were found in California driving the victim's pickup truck on the same highway.  The

15   manager of a service station testified that two attempted to steal gas, and then McDougal offered to

16   exchange a gold ring for the gas.  The victim's mother testified that her son wore a gold ring.  The

17   service manager impounded the truck to pay for the gas and petitioner and McDougal walked into

18   the desert.  They were arrested the following day.

19          Furthermore, it was established that the victim's truck had numerous blood stains in it, and

20   that Lord had blood matching the victim's blood type on his boots.  The blood did not match his or

21   McDougal's blood-type.  Furthermore, a boot print near the scene where the body was found was

22   similar to the boots that petitioner wore.

23          McDougal gave a statement to police that both he and petitioner stabbed the victim.  Exhibit

24   A-3.  At his own trial McDougal testified that he went with the victim and petitioner to a store to buy

25   beer, and then remembers waking up in the desert.  Exhibit A-24.  McDougal stated that he had no

26   memory of any of the events. *Id.*  In the affidavit McDougal states:

27               Mr. Thomas R. Lord had nothing to do with the crime of which we both
             were convicted of in this case.  I am solely responsible for the entire
28               incident.  As a man, I admit the whole incident was my fault in every way.

7

1

It is my responsibility as a human being to tell you that Mr. Lord played not part in this crime whatsoever.

2
(docket #78).

3          This claim that McDougal acted alone is not a new claim.  In 1995 the state district court held

4    an evidentiary hearing on petitioner's claim that trial counsel was ineffective for failing to

5    investigate and present evidence that McDougal committed the crimes.  Exhibit A-12, A-13.  At the

6    hearing McDougal testified that he acted alone, and was coerced into making his statement to police.

7    *Id*.  McDougal stated that the person with him at the service station, misidentified as petitioner, was

8    a hitchhiker who looked similar to the petitioner.  Exhibit A-13 at 24-20.  However, McDougal

9    admitted he never told police about this hitchhiker.  Exhibit A-13 at 31.  Furthermore, when asked

10   about why he used the pronoun "we" in his statement to police when discussing the crimes instead of

11   "I" if he had committed the crimes alone, McDougal offered no credible explanation.  *Id.* at 38-42.

12         Even if McDougal's affidavit can be considered "new" evidence, his claims that he acted

13   alone in committing the crimes are not reliable.  There is no need to test McDougal's credibility at an

14   evidentiary hearing as the record contains sufficient evidence upon which to assess McDougal's

15   credibility.  Petitioner has not established his factual innocence in this case.  The court finds that

16   McDougal's "new" testimony is not sufficient, when considered in light of all of the evidence

17   presented at trial, to show that it is more likely than not that no reasonable juror would have

18   convicted petitioner.

19         The court will grant respondents' motion to dismiss, as petitioner's claims were procedurally

20   defaulted in the state court.  Petitioner has not shown that the failure to consider his claims on the

21   merits will result in a miscarriage of justice.

22   **III.  Certificate of Appealability**

23         In order to proceed with an appeal from this court, petitioner must receive a certificate of

24   appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of

25   the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme Court

26   has held that a petitioner "must demonstrate that reasonable jurists would find the district court's

27   assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484

28   (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet that standard. Accordingly, the court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (docket #104) is **GRANTED.** The Court finds grounds one, two, seven, nine, and ten were procedurally defaulted in state court and that petitioner has not made a showing that his conviction amounts to a fundamental miscarriage of justice.

**IT IS FURTHER ORDERED** the first amended petition (docket #17) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED** a certificate of appealability.

DATED this 27th day of July, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE